**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

<table>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>HOLLY HILL NURSING LLC et al.,</td><td>*</td><td></td></tr>
<tr><td>Plaintiffs,</td><td>*</td><td></td></tr>
<tr><td>v.</td><td>*</td><td>Case No.: 8:17-cv-03554-PWG</td></tr>
<tr><td>LOURDES R. PADILLA et al.,</td><td>*</td><td></td></tr>
<tr><td>Defendants.</td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
</table>

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM OPINION

The plaintiffs[1] in this case are Ohio and Maryland companies that provide care for elderly and infirm patients. Each company purports to be acting in its capacity as the "authorized representative" of a patient who sought Medicaid benefits from the state of Maryland while in the company's care. *See* 42 C.F.R. § 435.923. The companies have brought this suit against two Maryland state officials, Department of Human Services Secretary Lourdes Padilla and Department of Health Secretary Robert Neall,[2] suing each in his official capacity for allegedly failing to administer the state's Medicaid program in accordance with federal law. Am. Compl., ECF No. 18.

---

[1] The plaintiffs are: Holly Hill Nursing LLC; St. Mary's Nursing Center, Inc.; and Howard Leasing Co.

[2] Padilla and Neall stepped into the role of Defendants in February 2018 as a result of a substitution of parties under Federal Rule of Civil Procedure 25(d). ECF No. 17. Plaintiffs' complaint had initially named Defendants' predecessors in office, Department of Human Services Secretary Sam Malhotra and Department of Health Secretary Dennis Shrader. Compl., ECF No. 1.

1

In broad strokes, Plaintiffs assert that state officials frustrated three of their patients' attempts to secure benefits through Maryland's medical assistance program. They allege, in particular, that program administrators failed to issue timely eligibility determinations and unlawfully required the patients to produce financial records that, because of their mental and physical impairments, they were ill equipped to locate or supply.

The Amended Complaint, ECF No. 18, brings seven claims. To begin, Plaintiffs seek relief under 42 U.S.C. § 1983 for violations of the federal Medicaid Act, 42 U.S.C. §§ 1396a(a)(1)(A), (a)(8), 1396d(a)(4)(A) (Counts II and III) and deprivations of due process and equal protection under the Fourteenth Amendment to the U.S. Constitution (Count VI). They further allege discrimination under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 (Count IV) and under § 504 of the Rehabilitation Act, 29 U.S.C. § 794(a) (Count V). Finally, Plaintiffs ask this Court to issue orders for declaratory relief (Count I) and injunctive relief (Count VII).[3]

Defendants have filed a motion to dismiss or, alternatively, for summary judgment, asserting a host of jurisdictional and merits-based defenses.[4] As this Memorandum Opinion will explain, I conclude the doctrine of sovereign immunity requires the Court to dismiss several of Plaintiffs' claims. I also conclude Plaintiffs have failed to state a claim under the Rehabilitation Act. Because none of Plaintiffs' claims survives scrutiny, the Motion to Dismiss will be granted.

---

[3] While Plaintiffs style their request for injunctive relief as an independent cause of action, case law makes plain that this is in error. Injunctive relief is not a cause of action; it is a remedy. *See Doe v. Salisbury Univ.*, 107 F. Supp. 3d 481, 493 (D. Md. 2015); *Augustson v. Bank of Am., N.A.*, 864 F. Supp. 2d 422, 439 (E.D.N.C. 2012). Accordingly, Count VII fails to state a claim and is dismissed with prejudice.

[4] The parties fully briefed the motion. ECF Nos. 19, 22 & 23. A hearing is not necessary. *See* Loc. R. 105.6.

# I.

## Background

Plaintiffs' Amended Complaint takes aim at the processes the State of Maryland has put in place to administer Medicaid benefits under Title XIX of the Social Security Act, commonly known as the Medicaid Act, 42 U.S.C. §§ 1396-1396w-5. The program, which draws funding from both state and federal sources, offers assistance to individuals who cannot afford to pay for their medical care. *See generally Dep't of Health & Mental Hygiene v. Campbell*, 771 A.2d 1051, 1053-54 (Md. 2001). Federal laws and regulations impose a number of conditions on states that accept federal funding for Medicaid, a few of which are especially relevant for present purposes. First, a state must furnish Medicaid benefits to eligible applicants "with reasonable promptness." 42 U.S.C. § 1396a(a)(8). Federal regulations go further, requiring states to make eligibility determinations "promptly and without undue delay." 42 C.F.R. § 435.912(b); *see also* 42 C.F.R. § 435.952(a) (requiring states to "promptly" evaluate the information they receive in the course of making an eligibility determination). The maximum amount of time permitted for determining an applicant's eligibility is set at 90 days. 42 C.F.R. § 435.912(c)(3). Maryland regulations tighten the timeframe, capping the eligibility-determination period at 30 days. Md. Code Regs. 10.09.24.04(I)(1)(b).

To facilitate the eligibility-determination process, Congress requires states to implement an "asset verification program," through which applicants authorize the state to obtain relevant financial records from financial institutions. 42 U.S.C. § 1396w(a)-(b). A state agency also must solicit information "from other agencies in the State and other States and Federal programs to the extent the agency determines such information is useful to verifying the [applicant's] financial eligibility." 42 C.F.R. § 435.948(a). A federal regulation provides: "An individual

must not be required to provide additional information or documentation unless information needed by the agency . . . cannot be obtained electronically or the information obtained electronically is not reasonably compatible." *Id.* § 435.952(c).

Here, Plaintiffs brought suit on behalf of three Maryland residents who encountered challenges in their attempts to secure Medicaid benefits through the state program. I will summarize their accounts in brief.[5]

### A.

### William H.

Plaintiff Holly Hill Nursing LLC ("Holly Hill"), an Ohio corporation, here seeks to represent the interests of William H.,[6] a resident at the Holly Hill Healthcare Center in Towson, Maryland, since August 2016. Am. Compl. ¶¶ 1, 4. While at the facility, William H. was suffering from a range of "severe" illnesses, including pulmonary hypertension, chronic obstructive pulmonary disease, type 2 diabetes, and acute bronchitis, as well as muscle weakness and atrophy. *Id.* ¶¶ 13, 14. Not long after his arrival at Holly Hill, he designated the facility as his "authorized representative" for purposes of the Medicaid application process and "other ongoing communications" with Maryland Medicaid program administrators, per 42 C.F.R. § 435.923.[7] *Id.* ¶ 21. Holly Hill submitted an application for long-term care Medicaid benefits on his behalf on November 22, 2016. *Id.* ¶ 16. Two and a half weeks later, on December 9, 2016, the State sent Holly Hill "various requests for verifications." *Id.* ¶ 5. Holly Hill responded

---

[5] In assessing a motion to dismiss, I accept the facts in the amended complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[6] To protect the privacy of the individual patients, I refer only to their first names and the first initial of their last names.

[7] This regulation provides in part: "The agency must permit applicants and beneficiaries to designate an individual or organization to act responsibly on their behalf in assisting with the individual's application and renewal of eligibility and other ongoing communications with the agency." 42 C.F.R. § 435.923(a)(1).

that an extension might be necessary.  *Id.*  On April 18, 2017, William H. personally wrote to the State to ask for extra time to acquire the requested information.  Id. ¶ 17.  The State did not respond.  *Id.*

The State ultimately denied William H.'s application, issuing a notice of denial on May 1, 2017.  *Id.* ¶ 19.  However, on March 27, 2018, about four months after Holly Hill initiated this suit, the State notified William H. that it had deemed him eligible for Medicaid benefits.[8]  *See* Notice of Eligibility 3, Mot. to Dismiss Ex. 1, ECF No. 19-2.  The period of eligibility was to run from November 2017 to October 2018.  *Id.*

## B.

## June H.

A second plaintiff, St. Mary's Nursing Center, Inc. ("St. Mary's"), is here representing the interests of June H., who resided at the company's facility in Leonardtown, Maryland, from June 4, 2014, until her death on February 16, 2016.  Am. Compl. ¶¶ 2, 5.

While at St. Mary's, June H. suffered from mental illnesses, including dementia, that impaired her ability to think, communicate, or care for herself.  *Id.* ¶ 23.  She also suffered from epilepsy, major depressive disorder, and type 2 diabetes.  *Id.* ¶ 22.  These conditions left her unable to participate in the Medicaid application process "without assistance."  *Id.* ¶ 25.

June H.'s application for long-term care medical assistance is dated October 3, 2014.  *Id.* At the time, it was her son, David, who acted as her attorney-in-fact and authorized

---

[8] Naturally, William H.'s receipt of benefits several months after the commencement of this action is a fact that cannot be found in the amended complaint.  Plaintiffs do acknowledge, though, that he has been receiving benefits through the program.  Pls.' Opp'n 8-9, ECF No. 22. To the extent the Court relies on this fact in the following analysis, the Court treats Defendants' motion as a motion for summary judgment.  *See Loconte v. Montgomery Cty., Md.*, No. PWG-17-2052, 2018 WL 3642586, at *3 (Aug. 1, 2018).

representative. *Id.* June H. and David, whose own health was in decline after a cancer diagnosis, struggled to provide verifications. *Id.*

June H. submitted a second Medicaid application on October 20, 2015, roughly one year after the first application had been filed. *Id.* The government issued a notice of ineligibility the following month, on November 19, 2015, explaining the decision was based on her failure to provide required information. *Id.* ¶ 26. The notice permitted her to reactivate her application by submitting requested verifications by April 20, 2016. *Id.* The notice further directed her to explain certain transfers she had made to her son. *Id.*

David died on December 2, 2015, leaving his widow to take over as June H.'s secondary attorney-in-fact. *Id.* ¶ 27. David's widow soon named St. Mary's as June H.'s authorized representative. *Id.* St. Mary's submitted "some" verifications to the government in early February 2016 but, because of June H.'s physical and mental disabilities, the facility was unable to provide an explanation about the transfers to her son. *Id.*

June H. died February 16, 2016. *Id.* ¶ 29. St. Mary's submitted a request for a good faith waiver on March 9, 2016. *Id.* The government did not respond to the request. *Id.* While a county case worker initially indicated the application would be approved, the government soon afterward stated in an email the application was being denied. *Id.* ¶ 30. On November 15, 2016, an administrative law judge dismissed an appeal of the denial, holding the appeal was untimely. *Id.* ¶ 33.

### C.

### Christine D.

The third plaintiff, Howard Leasing Co. ("Howard Leasing"), is an Ohio company that owns and operates the Marley Neck Health & Rehabilitation Center in Glen Burnie, Maryland.

Am. Compl. ¶ 3. Howard Leasing is here representing Christine D., a patient who, like June H., suffered from mental illness, including dementia. *Id.* ¶ 35. Her illness impaired her ability to think, communicate, or care for herself. *Id.*

Christine D.'s application for long-term medical assistance was dated December 10, 2015. *Id.* ¶ 36. Two days later, the State asked her to provide additional information. *Id.* She died on January 18, 2016, without having designated anyone to serve as her authorized representative for Medicaid benefits. *Id.* ¶¶ 6, 40. Nevertheless, the State continued to send requests for verifications. *Id.* ¶ 38. These requests included a revised request for information on February 16, 2016, and a "reminder notice" on May 7, 2016. *Id.* The State finally issued a notice of denial on June 3, 2016, citing Christine D.'s failure to provide requested verifications. *Id.* ¶ 39.

The personal representative of Christine D.'s estate unsuccessfully appealed the denial. *Id.* ¶¶ 42-44. Later, just before this suit was filed, the personal representative designated Marley Neck as Christine D.'s authorized representative under 42 C.F.R. § 435.923. *Id.* ¶ 41.

## II.

### Standard of Review

A district court assesses a motion to dismiss on the pleadings, without need of a hearing. *Smith v. Montgomery Cty. Corr. Facility*, No. PWG-13-3177, 2014 WL 4094963, at *1 (D. Md. Aug. 18, 2014). A complaint that "fails to state a claim upon which relief can be granted" warrants dismissal under Federal Rule of Civil Procedure 12(b)(6). *Pegues v. Wal-Mart Stores, Inc.*, 63 F. Supp. 3d 539, 541 (D. Md. 2014). Under Rule 8(a)(2), the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Beyond that, the Supreme Court has held that claims for relief must be "plausible,"

specifying that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663.

When reviewing a motion to dismiss, "[t]he court may consider documents attached to the complaint, as well as documents attached to the motion to dismiss, if they are integral to the complaint and their authenticity is not disputed." *Sposato v. First Mariner Bank*, No. CCB–12–1569, 2013 WL 1308582, at *2 (D. Md. Mar. 28, 2013); *see also CACI Int'l v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009). However, if the Court considers matters outside the pleadings, the Court must treat the motion as a motion for summary judgment. Fed. R. Civ. P. 12(d); *Syncrude Canada Ltd. v. Highland Consulting Grp., Inc.*, 916 F. Supp. 2d 620, 622–23 (D. Md. 2013).

### III.

### Discussion

### A.

### Sovereign Immunity

Defendants first argue the Eleventh Amendment bars Plaintiffs' § 1983 claims alleging violations of the Medicaid Act (Counts II and III) and the Due Process and Equal Protection Clauses of the U.S. Constitution (Count VI). They then argue, separately, that Congress's abrogation of sovereign immunity for claims brought under Title II of the ADA does not apply to Plaintiffs' ADA discrimination claim (Count IV) because Plaintiffs have not adequately alleged that Defendants violated a right guaranteed by the Fourteenth Amendment to the U.S. Constitution. These two arguments are distinct. I will address them separately.

**1.**

**§ 1983 Claims**

The Eleventh Amendment bars citizens from bringing a federal lawsuit against a state without the state's consent. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44 (1996); *Lee-Thomas v. Prince George's Cty. Pub. Schs.*, 666 F.3d 244, 248 (4th Cir. 2012). This grant of immunity extends to "state agents and state instrumentalities," including state officials. *Bland v. Roberts*, 730 F.3d 368, 389-90 (4th Cir. 2013) (quoting *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997)). Plaintiffs, who have sued Defendants in their official capacities as the heads of the Maryland Department of Human Services and Department of Health, do not dispute that Defendants are state officials for Eleventh Amendment purposes. They maintain, though, that their suit may proceed under the *Ex Parte Young* exception.

The *Ex Parte Young* doctrine makes it possible for plaintiffs to petition the courts to enjoin state officers from engaging in conduct that violates the U.S. Constitution or federal law. *See Antrican v. Odom*, 290 F.3d 178, 184 (4th Cir. 2002). The doctrine does not permit the recovery of damages for past violations. It concerns itself only with future conduct, asking the court to "conduct a 'straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *D.T.M. ex rel. McCartney v. Cansler*, 382 F. App'x 334, 337 (4th Cir. 2010) (per curiam) (quoting *Verizon Md. Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002)).

Throughout the Amended Complaint, Plaintiffs broadly insist that Defendants are engaging in ongoing violations of the U.S. Constitution and federal law. *See, e.g.*, Am. Compl. ¶ 135. I pause a moment to point out, though, that the strict terms of 42 U.S.C. § 1983 state that a person acting under color of law "*shall be liable to the party injured*." 42 U.S.C. § 1983

(emphasis added). It should be clear, then, that Plaintiffs' § 1983 claims (Counts II, III, and VI) necessarily seek redress for the harm Defendants allegedly inflicted on William H., June H., and Christine D. in particular – not on similarly situated Medicaid applicants in general. *Cf. City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983) (concluding that a victim of police violence lacked standing to seek prospective injunctive relief in a § 1983 suit "absent a [showing of] a significant likelihood that *he* will again be wronged in a similar way (emphasis added)).

With that said, the Court must now consider the two distinct arguments Defendants' raise in seeking to dismiss the § 1983 claims. First, Defendants argue that because June H. and Christine D. are deceased, any relief sought on their behalf cannot be considered prospective. Mot. to Dismiss 14, ECF No. 19-1. Second, they argue Holly Hill's claims on behalf of William H. cannot allege an "ongoing violation of federal law" because he is currently receiving long-term Medicaid benefits. *Id.* at 15. I will address each of these contentions in turn.

### i.

### June H. and Christine D.

June H. and Christine D. died before this suit commenced. That being the case, there is simply no way to accord prospective relief for the wrongs their authorized representatives allege. This Court recently said as much in *Wicomico Nursing Home v. Padilla*, holding that Eleventh Amendment immunity shielded Maryland Medicaid administrators in a suit brought by the assignees of several deceased Medicaid applicants. No. RDB-16-1078, 2017 WL 3383105, at *5 (D. Md. Aug. 7, 2017) ("Notwithstanding the Facilities' assertion that they are seeking prospective relief, they are unable to demonstrate how the relief sought in this suit on behalf of these residents can be characterized as 'prospective' so as to fall within the *Young* exception. There is, of course, no prospective relief available to the deceased residents." (emphasis

omitted)); *see also Lorien Life Ctr. Balt. Cty., Inc. v. Malhotra*, No. MJG-15-2865, 2016 WL 1696451, at \*2 (D. Md. Apr. 28, 2016) (holding that Eleventh Amendment immunity barred a deceased Medicaid applicant's claims against Maryland program administrators).

At least one other court has arrived at the same conclusion. *See Future Care Consultants, LLC v. Connolly*, No. 17-2552, 2018 WL 1069414, at \*4-5 (D.N.J. Feb. 26, 2018); *see also Carespring Healthcare*, 2018 WL 1138428, at \*11 (concluding that claims relating to deceased Medicaid applicants "must be characterized as requests for retroactive relief" under *Ex Parte Young*). Plaintiffs, meanwhile, have not identified any cases where a court permitted a party representing the interests of a deceased welfare program applicant to sue state officials under the *Ex Parte Young* doctrine.

On these facts, Plaintiffs cannot establish an ongoing violation of law capable of prospective relief. *See Wicomico Nursing Home*, 2017 WL 3383105, at \*5. I therefore dismiss Counts II, III, and VI with prejudice, insofar as they relate to June H. and Christine D. *See Kabando v. Boente*, No. 1:17-cv-76, 2017 WL 4507471, at \*2 n.7 (E.D. Va. May 31, 2017) ("[T]he fact that immunity may be waived suggests that it is quasi-jurisdictional, and that judicial power remains to dismiss the action with prejudice, as the alleged cause of action is not cognizable.").

### ii.

### William H.

Defendants contend the § 1983 claims brought on William H.'s behalf must be scuttled for similar reasons. Along with their Motion to Dismiss, Defendants submitted documentation showing that, following the commencement of this suit, the State deemed William H. eligible to receive benefits under Maryland's Medicaid program. Notice of Eligibility 3, ECF No. 19-2.

Plaintiffs do not dispute that he is currently receiving benefits. *See* Pls.' Opp'n 8-9, ECF No. 22. Defendants argue he cannot be suffering an ongoing violation of law now that he is benefitting from the program.

As before, whether a Plaintiff seeks prospective relief depends, at least in part, on the particularities of the violations alleged in the complaint. Count II alleges state officials failed to provide benefits in compliance with 42 U.S.C. § 1396a(a)(10)(A). That provision of the Medicaid Act requires states to "mak[e] medical assistance available" to qualifying individuals. 42 U.S.C. § 1396a(a)(10)(A). As of this moment, though, the State is making assistance available to William H.[9] Plaintiffs have not explained how this Court might fashion prospective relief under these circumstances.

Count III alleges the State violated 42 U.S.C. § 1396a(a)(8), which requires states to "provide that all individuals wishing to make application for medical assistance under the plan shall have [an] opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals." 42 U.S.C. § 1396a(a)(8). Plaintiffs allege, in particular, that officials were slow in reviewing William H.'s application and failed to issue a timely notice of denial. Perhaps so, but any tardiness on the part of the State occurred in the past, and Plaintiffs fail to explain how the Court might accord prospective relief now that William H. is receiving benefits. Try as I might, I cannot order the State to take action in the future to speed up an eligibility evaluation that concluded before suit was brought, especially when, as here, it changed its course and began providing the very benefits originally sought.

---

[9] In considering this fact, which postdates the amended complaint but is undisputed, I treat Plaintiffs' motion as a motion for summary judgment. *See Loconte v. Montgomery Cty., Md.*, No. PWG-17-2052, 2018 WL 3642586, at *3 (Aug. 1, 2018).

Plaintiffs' claims under the U.S. Constitution (Count VI) raise similar questions. Were it not for the Eleventh Amendment, Plaintiffs might seek compensation for these past wrongs. That is not available here, though, and Plaintiffs have not identified any prospective relief the Court might order in its place.

Plaintiffs ask this Court to take guidance from the Fourth Circuit's unpublished opinion in *D.T.M. ex rel. McCartney v. Cansler*. There, the Fourth Circuit held the Eleventh Amendment did not bar a § 1983 suit against a state official responsible for administering Medicaid programs. 382 F. App'x 334, 335 (4th Cir. 2010) (per curiam). That case, though, is inapposite. First, unlike two of the applicants in this case, the plaintiffs in *D.T.M.* were alive at the time the court rendered its judgment. Second, the *D.T.M.* plaintiffs' allegation was that state officials had arbitrarily terminated or reduced their benefits. They sought to enjoin the State to (1) continue providing services to current beneficiaries while bringing the program in line with federal law and (2) reinstate services the State had previously provided. *See id.* at 336. The Fourth Circuit concluded, first, that "the request for prospective reinstatement of benefits is precisely the type of relief" the Fourth Circuit has upheld under *Ex Parte Young*. *See id.* at 337 (citing *Kimble v. Solomon*, 599 F.2d 599, 605 (4th Cir. 1979)). Second, while not deciding whether reinstating benefits would qualify as prospective relief under *Ex Parte Young*, the Fourth Circuit concluded that "injunctive relief from the continuation of [the State's] illegal practices would." No such remedies are available here.

Plaintiffs' reliance on *Doctors Nursing & Rehabilitation Center, LLC v. Norwood*, No. 1:16-cv-9837, 2017 WL 2461544 (N.D. Ill. June 7, 2017), is similarly misplaced. The patients in that case were either still awaiting Medicaid eligibility determinations or had been approved but were waiting to start receiving benefits. 2017 WL 2461544, at *1. The District Court for the

Northern District of Illinois concluded the patients could properly seek prospective relief in the form of an injunction requiring state officials to arrange for medical assistance and nursing facility services for those patients. *Id.* at *3. Plaintiffs here, who either are deceased or are already receiving benefits, cannot seek the same.

For these reasons, I conclude the Eleventh Amendment bars Counts II, III, and VI of the Amended Complaint. These claims are dismissed with prejudice. *See Kabando*, 2017 WL 4507471, at *2 n.7.

## 2.

## ADA Claim

Plaintiffs' discrimination claim under Title II of the ADA also implicates the Eleventh Amendment, but this claim requires a different analysis.

Congress has expressly abrogated Eleventh Amendment immunity under the ADA. *See* 42 U.S.C. § 12202. The pertinent statute provides: "A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of [42 U.S.C., Ch. 126]." *Id.* In *United States v. Georgia*, the Supreme Court explained that this provision abrogates state sovereign immunity "insofar as Title II creates a private cause of action for damages against the States for conduct that actually violates the Fourteenth Amendment." 546 U.S. 151, 159 (2006) (emphasis omitted). Defendants cite *Georgia* for the proposition that states and state officials retain immunity for Title II claims that do not properly allege a Fourteenth Amendment violation, but this is incorrect. The *Georgia* Court expressly contemplated the possibility that, in exercising its enforcement power under § 5 of the Fourteenth Amendment, Congress may have abrogated state immunity for at least some claims alleging conduct that violates Title II but does not in and of

itself run afoul of the U.S. Constitution. *See* 546 U.S. at 159; *see also Guttman v. Khalsa*, 669 F.3d 1101, 1117 (10th Cir. 2012) (explaining that § 5 of the Fourteenth Amendment accords Congress "broad" enforcement powers, including the power to deter violations of Fourteenth Amendment rights by "'prohibiting a somewhat broader swath of conduct' than that which the Amendment itself proscribes" (quoting *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 81 (2000))); *Spencer v. Earley*, 278 F. App'x 254, 257-58 (4th Cir. 2008). Although the Court declined to limn the boundaries of Congress's abrogation of state sovereign immunity under Title II, it did offer guidance to assist lower courts in their examinations. The three-part *Georgia* test asks the district court to determine

> on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

*Georgia*, 546 U.S. at 159.

Here, Plaintiffs assert broadly that state officials discriminated against the three patients by "fail[ing] to provide a system which ensures that medical assistance will be available" and "fail[ing] to afford the Plaintiffs public benefits and services to which they are entitled under federal law." Am. Compl. ¶¶ 95, 96. In support of this assertion, the Amended Complaint chronicles several bureaucratic obstacles the applicants or their authorized representatives encountered during the application process. I find it useful to separate the allegations.

### i.

### Eligibility Verifications

I first consider Plaintiffs' allegations that the State placed improper demands on the Medicaid applicants to produce records demonstrating their eligibility to receive benefits, in spite of a federal regulation requiring states to seek out available information from third parties. *See* 42 C.F.R. § 435.952(c). As I will explain, I conclude the facts in the Amended Complaint are not adequate to state a claim of discrimination under Title II and therefore fail the first prong of the *Georgia test*. It is possible, though, that further amendments to the complaint might remedy this defect. Accordingly, for the reasons that follow, I will dismiss this aspect of Plaintiffs' Title II claim without prejudice.

The first step of the *Georgia* inquiry requires the district court to assess whether Defendants' alleged conduct "forms the basis for a Title II claim." *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 553 (3rd Cir. 2007); *see Gattuso v. N.J. Dep't of Human Servs.*, 881 F. Supp. 2d 639, 647-48 (D.N.J. 2012).

Plaintiffs accuse state officials of violating 42 U.S.C. § 12132, which provides: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To establish a violation of this statute, a plaintiff must show that (1) she has a disability, (2) she is otherwise qualified for the benefit in question, and (3) she was denied the benefit, or was otherwise discriminated against, on the basis of the disability. *See Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 502-03 (4th Cir. 2016). A failure to make reasonable accommodations may constitute discrimination under Title II. *See id.* at 503 n.5.

The Amended Complaint alleges that each of the three patients suffered from "severe" mental or physical impairments that complicated their efforts to obtain Medicaid benefits. William H. suffered from pulmonary hypertension, chronic pulmonary disease, type 2 diabetes, [and] acute bronchitis, among other severe medical illnesses, as well as "muscle weakness and muscle wasting atrophy, which substantially impaired his mobility." Am. Compl. ¶¶ 13, 14. June H. and Christine D. each suffered from dementia, among other ailments. *Id.* ¶ 23, 35. The crux of Plaintiff's Title II claim is that these impairments left the applicants "physically and mentally unable to engage and respond to the complicated and multifaceted eligibility process. *Id.* ¶ 142.

Plaintiffs observe that federal regulations seek to spare Medicaid applicants the burden of having to supplement their applications with page after page of supporting financial records. *See* 42 C.F.R. § 435.952(c) ("An individual must not be required to provide additional information or documentation unless information needed by the agency in accordance with § 435,948, § 435.949 or § 435.956 of this subpart cannot be obtained electronically or the information obtained electronically is not reasonably compatible . . . ."). Despite this, Plaintiffs allege, "The Defendants did not seek to obtain any of the Plaintiffs' information electronically . . . . Nor did [Defendants] try to obtain Plaintiffs' information from secondary sources. Instead, the Defendants placed the burden of providing information entirely on the Plaintiffs." Am. Compl. ¶ 61. The Amended Complaint goes on to allege that when one of the applicants, William H., personally requested an extension to track down the requested information, the State failed to respond. *Id.* ¶ 17.

The problem with the Amended Complaint is that it fails to plead any particulars about the details of the State's document requests. Plaintiffs have not asserted that the requested

records were indeed available either electronically or from third parties the State was legally required to consult before placing the burden of production on the applicants themselves. As filed, the Amended Complaint fails to indicate that proper adherence to the State's regulatory obligations would have made it unnecessary to solicit the patients directly. I conclude, accordingly, that Count IV of the Amended Complaint fails to state a claim under Title II of the ADA and that Plaintiffs have not satisfied the first prong of the *Georgia* test. However, because it may be possible for Plaintiffs to allege additional facts in support of their claim, I dismiss Count IV without prejudice.

In taking this step, I note that neither party's submissions to this Court properly applied the three-part *Georgia* framework. Even if, in amending the complaint a second time, Plaintiffs adequately state a claim under Title II, they will still need to persuade the Court their claim survives *Georgia*'s second and third prongs. I reserve the right to request further briefing on the matter, should the need arise.

## ii.

## Other Alleged Deficiencies

Plaintiffs also argue the State discriminated against the applicants in other ways. In particular, they assert that officials failed to respond adequately to a St. Mary's representative's April 2016 request for a notice of the State's decision to deny benefits for June H. Am. Compl. ¶ 30. Plaintiffs also take issue with the administrative law judges' dismissals of the appeals of June H. and Christine D., citing these as further evidence of discrimination. *Id.* ¶¶ 33, 44. These allegations, I find, do not support a Title II claim.

Plaintiffs acknowledge the patients were not seeking benefits on their own. Two of them, William H. and June H., designated a third party to act as his or her authorized representative

pursuant to 42 C.F.R. § 435.923. Federal Medicaid regulations state that an authorized representative is empowered to: "(1) sign an application on the applicant's behalf, (2) complete and submit a renewal form, (3) receive copies of the applicant or beneficiary's notices and other communications from the agency; [and] (4) act on behalf of the applicant or beneficiary in all other matters with the agency." 42 C.F.R. § 435.923(b).

In June H.'s case, the Amended Complaint makes clear that she played no more than a limited role in the Medicaid application process, on account of her debilitating mental illness. Am. Compl. ¶¶ 24-27. Her son first acted as her attorney-in-fact and authorized representative. *Id.* ¶ 25. Later, the son's widow provided assistance as secondary attorney-in-fact and named St. Mary's as June H.'s authorized representative. *Id.* ¶¶ 27-28. While Plaintiffs complain the State failed to respond to St. Mary's subsequent requests for a waiver or for a notice of denial, there is simply no way to construe these failures as a form of disability-based discrimination against June H. herself.

Plaintiffs' assertions that the administrative law judges "wrongly" denied the appeals of June H. and Christine D.'s appeals are no more availing. Those appeals were brought by third parties after the two of them had passed away. Am. Compl. ¶¶ 33, 44. The administrative law judges' decisions cannot have denied June H. or Christine D. a reasonable accommodation on the basis of their disabilities.

I conclude that these allegations do not support a claim of discrimination under 42 U.S.C. § 12132 and are not sufficiently well pleaded to overcome Defendants' Eleventh Amendment sovereign immunity. I therefore dismiss these aspects of Plaintiffs' Title II claim with prejudice.

## B.

## Failure to State a Claim

Defendants next argue that Plaintiffs' claim under § 504 of the Rehabilitation Act (Count V) fails to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6).[10] I need not expound on this at length here, though, because I have already explained why the amended complaint, in its present form, fails to state a claim under Title II of the ADA.

The elements of a § 504 claim and a Title II claim are not exactly the same, though they do overlap. For present purposes, the most relevant distinction is that § 504 claims have a stricter causation requirement. To state a claim under § 504, a plaintiff must allege facts establishing he suffered discrimination "solely by reason of her or his disability." 29 U.S.C. § 794(a). By contrast, Title II claims merely require a showing that the disability was a "motivating cause." *Thomas v. Salvation Army S. Territory*, 841 F.3d 632, 641 (4th Cir. 2016).

As I detail above, Plaintiffs have not properly alleged that Defendants discriminated against the three patients on whose behalf this suit was brought. Plaintiffs may be able to repair this defect by alleging that the information state officials pressed the three patients to provide was either unnecessary or otherwise available. To the limited extent, then, that Plaintiffs seek to base Count V on Defendants' failure to seek records from third-party sources, this claim is dismissed without prejudice.

---

[10] Defendants did not assert a sovereign immunity defense for this claim, presumably recognizing that Congress has expressly and unequivocally abrogated Eleventh Amendment immunity for § 504 claims. *See* 42 U.S.C. § 2000d-7(a)(1) ("A state shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973 . . . ."); *Levy v. Kan. Dep't of Soc. & Rehab. Servs.*, 789 F.3d 1164, 1170 (10th Cir. 2015) (explaining that Congress's power to abrogate state sovereign immunity for Rehabilitation Act claims derives from Congress's authority under the Spending Clause, whereas its power to abrogate immunity for ADA claims is subject to the constitutional limitations on congressional power to enforce the Fourteenth Amendment).

## C.

### Declaratory Relief

Having dismissed Counts II through VI, I am left with Plaintiffs' request for declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201 (Count I). I conclude that this claim cannot proceed at present because there is no longer a "case" or "controversy" this Court may properly adjudicate under Article III of the U.S. Constitution. *See Dyer v. Md. State Bd. of Educ.*, 685 F. App'x 261, 262 (4th Cir. 2017) (per curiam).

The Declaratory Judgment Act "is remedial only and neither extends federal courts' jurisdiction nor creates any substantive rights." *CGM, LLC v. Bell S. Telecomms., Inc.*, 664 F.3d 46, 55 (4th Cir. 2011). Accordingly, "a request for declaratory relief [under § 2201] is barred to the same extent that the claim for substantive relief on which it is based would be barred." *Id.* at 55-56 (alteration omitted) (quoting *Int'l Ass'n of Machinists & Aerospace Workers v. Tenn. Valley Auth.*, 108 F.3d 658, 668 (6th Cir. 1997)).

As I have explained, Plaintiffs' substantive claims in Counts II, III, IV, and VI are barred by the Eleventh Amendment. The lone remaining substantive claim, brought under § 504 of the Rehabilitation Act claim (Count V), fails to state a claim under Federal Rule of Civil Procedure 12(b)(6). Plaintiffs' case, now devoid of all claims for substantive relief, cannot survive on the sole basis of a request for declaratory relief. Count I is therefore dismissed without prejudice.

## IV.

### Conclusion

In sum, I conclude that Plaintiffs' § 1983 claims (Counts II, III, and VI) are barred by sovereign immunity. I dismiss these claims with prejudice. I also conclude that Plaintiffs have failed to state a claim for relief under Title II of the ADA (Count IV) or the Rehabilitation Act

(Count V).  I recognize, though, that Plaintiffs may be able to cure the pleading deficiencies for those two claims by alleging facts that would support a determination that Defendants' failure to solicit financial records from electronic databases or third-party sources discriminated against the three patients.  (Plaintiffs are cautioned, however, that any further amendment of the complaint that may be permitted will be limited to this narrow ground.)  Accordingly, I dismiss Counts IV and V without prejudice.[11]  I do so only, though, to the extent these counts allege Defendants failed to properly seek financial records from third-party sources.  To the extent the counts are based on other alleged deficiencies, the counts are dismissed with prejudice.  Having dismissed all of Plaintiffs' claims for substantive relief, I must also dismiss Plaintiffs' claim for declaratory relief (Count I).  That claim is dismissed without prejudice.

A separate order will follow.

Date:  October 16, 2018
_____/S/_____
Paul W. Grimm
United States District Judge

---

[11] As explained above, though, it is my view that neither party has adequately briefed the issue of whether the Eleventh Amendment would bar Plaintiffs' ADA claim (Count IV) in the event Plaintiffs do cure the pleading deficiency.  If necessary, I will request additional briefing on this question.